UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


BRIDGETT CHANDLER, et al,

        Plaintiffs

v.                            Case No. 1:12 cv 223-HJW


CHS-PARK VIEW, INC.,

        Defendant

## ORDER


      Pending is the plaintiffs' "Motion for Summary Judgment" (doc. no. 19). Plaintiffs have submitted proposed findings of fact and conclusions of law, which defendant has highlighted as true, false, or irrelevant (doc. no. 24-6). Also pending are the plaintiffs' "Objections" (doc. nos. 31-33) to various defense affidavits and exhibits, and the plaintiffs' "Motion for Contempt" (doc. no. 30). Defendant opposes these motions and objections, and also requests leave to file a sur-reply regarding the contempt motion (doc. no. 42). Having fully considered the record, including the parties' briefs, exhibits, and applicable authority, the Court will overrule the objections, deny the motion for summary judgment, deny the motion for contempt, and deny (as moot) the motion to file a sur-reply for the following reasons:

1

## I.  Background and Procedural History

In 2011, plaintiff Bridgett Chandler was employed by the defendant CHS-Park View, Inc. ("CHS") as a floor nurse at a skilled nursing facility in Ohio. At the beginning of her day shift on the morning of April 4, 2011, she refused to accept the facility keys from the nightshift supervisor (Nurse Hall), left work early, and did not return. The parties dispute the circumstances and reasons for her departure.

On March 16, 2012, Chandler filed a federal complaint, contending that 1) CHS wrongfully terminated her employment in violation of Ohio public policy; and 2) CHS subsequently did not comply with the notification requirements of Consolidated Omnibus Budget Reconciliation Act ("COBRA"), at 29 U.S.C. § 1161 et seq. She also named her minor child "B.C." as a plaintiff.[1]

Defendant CHS answered (doc. no. 7) and asserted that Chandler was an at-will employee who had voluntarily quit her job (¶¶ 4, 6, 9 "Affirmative Defenses"). CHS asserted that Chandler was "guilty of gross misconduct" (¶ 7) and that any alleged "termination" of Chandler's employment did not violate any Ohio public policy (¶¶ 2, 4, 5). In light of COBRA's notification exception for termination due to "gross misconduct," CHS denied that it was required to send her notification of continued health insurance coverage. CHS also asserted that plaintiff was not entitled to a jury trial on such claim (¶ 10).

On June 14, 2012, the parties indicated to the Court they both anticipated conducting written discovery and depositions (doc. no. 8, ¶ 10(a), Rule 26(f)

---

[1] For simplicity's sake, the Court will hereinafter refer to "plaintiff."

Report). The Court set a discovery deadline of December 31, 2012, a dispositive motions deadline of February 1, 2013, and trial in the June 2013 term (doc. no. 11, Scheduling Order). According to plaintiff's counsel, "neither party engaged in any discovery, other than the initial disclosures" during the discovery period (doc. no. 30 at 1). Defense counsel, however, points out that he repeatedly attempted (on July 19 and September 10, 11, and 20, 2012) to schedule Chandler's deposition, but was ignored by plaintiff's counsel. Defense counsel contacted him again on December 28, 2012, and they agreed to conduct several depositions on January 29-30, 2013, one day before the dispositive motions deadline. Neither side filed any discovery motions pursuant to Rule 26 or 37 in the discovery period.

On January 14, 2013, the parties filed a Joint Status Report, advising that "discovery is not yet complete, although the parties have agreed to take several depositions out of time" (doc. no. 15). CHS filed notices of the agreed depositions of Bridgett Chandler and Theresa Snow (doc. nos. 17, 18). Plaintiff did not file any notices of deposition in the docket.

On February 1, 2013, Chandler filed a "Motion for Summary Judgment" with three exhibits: her own affidavit, the affidavit of nightshift supervisor Likicia Hall, R.N., and a COBRA notice dated March 28, 2012 (doc. no. 19). Although this Court's Order required "Proposed Findings of Fact and Conclusions of Law" to be filed with the motion, plaintiffs did not do so, and instead, sent them by email to defense counsel. When CHS sought a 3-day extension of time to respond, plaintiff opposed the request. After additional briefing, plaintiff withdrew

**3**

opposition. On March 5, 2013, CHS filed its summary judgment response with numerous exhibits, including its high-lighted version of the plaintiff's proposed findings (doc. no. 24-6). The Court deemed the response timely (doc. no. 26 "Order"). CHS also filed the transcript of Chandler's Deposition (doc. no. 25).

On March 18, 2013, plaintiff filed a reply (doc. no. 34) and three sets of "Objections" (doc. no. 31-33) to the affidavits and exhibits that CHS had filed with its response to the motion for summary judgment. Plaintiff also filed three "Notices" (doc. no. 27-29) with attachments, consisting of a transcript of a telephonic hearing before the "Unemployment Compensation Review Commission" on July 25, 2011, a copy of a subpoena for Parkview's former Director of Nursing Vanessa Graham (now Kennon), and transcript pages reflecting that the witness did not appear at deposition on January 30, 2013. Plaintiff also filed a "Motion to Hold Vanessa Kennen (sic) and Eric B. Hershberger in Contempt to Court" (doc. no. 30). CHS filed responses to the objections and contempt motion (doc. nos. 35-37), and plaintiff replied (doc. no. 38-40). The objections and motions are fully briefed and ripe for consideration.

## II. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010, provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense or the part of each claim or defense on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

**4**

material fact and the movant is entitled to judgment as a matter of law.

Rule 56(c)(1) further provides that:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Under Rule 56, the moving party bears the burden of proving that no genuine issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (l986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. Id. at 587. In reviewing a motion for summary judgment, a court must determine whether the evidence is so one sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 52 (1986).

## III. Relevant Law

The Ohio Supreme Court first recognized a public policy exception to the doctrine of "at will" employment in Greeley v. Miami Valley Maintc. Contractor, Inc., 49 Ohio.St.3d 228 (1990). In order to establish a claim under Ohio law for wrongful discharge in violation of public policy, plaintiff must prove: (1) a clear public policy manifested in a statute, regulation, or common law; (2) that discharging an employee under circumstances like those involved would

jeopardize the policy; (3) that the discharge was motivated by conduct related to the policy; and (4) that there was no overriding business justification for the discharge. Knox v. Neaton Auto Products Mfg., Inc., 375 F.3d 451, 459 (6th Cir. 2004); White v. Sears, Roebuck & Co., 163 Ohio App.3d 416, 421 (2005); Johnson v. JPMorgan Chase & Co., --- F.Supp.2d ----, 2013 WL 485796, *11 (S.D.Ohio). Elements 1 and 2 are questions of law to be determined by the Court, whereas elements 3 and 4 are questions of fact to be decided by the finder of fact. Id.; Beery v. Assoc. Hygienic Products, LLC, 243 Fed.Appx. 129, 135 (6th Cir. 2007); Collins v. Rizkana, 73 Ohio St.3d 65, 70 (1995) ("The jury decides factual issues relating to causation and overriding justification."); George v. Fairfield Metr. Housing Auth., 2008 WL 3008663, *7 (S.D.Ohio) (same).

As for plaintiff's COBRA notification claim, the statute requires employers sponsoring group health plans to notify an employee of her option to continue coverage after a "qualifying event." 29 U.S.C. §§ 1161(a), 1163, 1166(a)(4). Under COBRA, termination due to "gross misconduct" is not a qualifying event. 29 U.S.C. § 1163(2) (defining the term "qualifying event" as including "termination (other than by reason of such employee's gross misconduct) . . . of the covered employee's employment"). Thus, in the event of termination for gross misconduct, an employee loses the right to elect continued coverage, and the employer is exempted from the COBRA notice requirement. 29 U.S.C. § 1163(2); see, e.g., Deutsch v. Kroll Assoc., Inc., 2003 WL 22203740, *6 (S.D.N.Y.); Boudreaux v. Rice Palace, Inc., 491 F.Supp.2d 625, 637 (W.D.La. 2007).

## IV. Analysis

## A. The Claim for "Termination in Violation of Public Policy"

With respect to the first and second elements, plaintiff argues that Ohio has a clear policy manifested in its statutes and regulations regarding the care provided by LPNs, and that discharging her under circumstances of her case would jeopardize such policy. Plaintiff argues that the "Ohio General Assembly has issued rules governing the practice on nursing by RNs and LPNs" and points to Ohio R.C. § 4723.01(F), which defines "[t]he practice of nursing as a licensed practical nurse" as "providing to individuals and groups nursing care … at the direction of a licensed physician … or registered nurse." She cites Ohio Admin. Code § 4723-4-04 "Standards relating to competent practice as a licensed practical nurse" and argues that she believed "in good faith" that accepting the supervisor's keys could (possibly) have required her to work outside the scope of her LPN license and therefore, she is entitled to summary judgment on her claim that her termination violated public policy (doc. no. 34 at 4).

Even assuming that Ohio Admin. Code § 4723-4-04 sets the state standard for  competent practice of LPNs and embodies a "clear policy," plaintiff is not entitled to summary judgment because the materials cited in her motion "do not establish the absence" of any genuine disputes on the second element of her public policy claim. In other words, plaintiff's own subjective belief that accepting the supervisor's keys could (possibly) have required her to work outside the scope of her LPN license is insufficient to establish that she was discharged under circumstances that would jeopardize Ohio's policy regarding competent nursing practices.

**7**

CHS points to state regulations and the opinion evidence of three registered nurses ("R.N.") contradicting the factual and legal basis for Chandler's subjective belief that she was being asked to assume duties that were beyond her skill level as an LPN, that might violate nursing regulations, or that might jeopardize her nursing license (doc. no. 24-1 at 4-25, attached affidavits of Nurses Kennon, Maninga, and McIntosh, and 24-5 at 2, Ohio Admin. Code § 3701-17-08 "Personnel Requirements" for nursing homes). CHS disputes the plaintiff's allegation that briefly accepting the nightshift supervisor's keys would have placed her "in control of the entire facility," and that as a result, she would have been "providing nursing care without the supervision of a physician or RN, in violation of the standards of practice for an LPN" (doc. 1, ¶ 14). Given plaintiff's subjective belief, CHS points to Ohio Admin. Code § 3701-17-08 which provides that "Each nursing home shall have a registered nurse on call whenever one is not on duty in the home" (doc. no. 24-5 at 2). The evidence of record indicates that Chandler had previously accepted the keys without incident. When asked if Chandler had been given the "medication cart keys on previous occasions," McIntosh testified "Yes, that was the regular routine" (doc. no. 29-1 at 6, Transcript).

In addition, the record reflects that plaintiff has not shown that she is not entitled to summary judgment with respect to the third and fourth elements of her public policy claim (i.e., whether the discharge was motivated by conduct related to the policy; and whether there was an overriding business justification for the

**8**

discharge). As the parties have concentrated on disputed facts regarding these elements, the Court will proceed further.

### 1. Undisputed Factual Allegations

First, the Court observes that the following facts from the plaintiff's "Proposed Findings" (doc. no. 24-6) are *not* disputed: CHS is an Ohio corporation that operated a skilled nursing facility known as The Residence at Park-View ("Park-View") for disabled and elderly patients (¶ 1). The complaint lists the address for defendant CHS as "8200 Beckett Park Drive, Hamilton Ohio" and indicates that the Park-View facility was located at "6300 Daily Road, Ohio" (¶ 2).[2] CHS employed Bridgett Chandler as a floor nurse on the day shift, usually on the West or South Units of the facility (¶¶ 2, 5). Chandler was a Licensed Practical Nurse ("LPN"), and much of her work involved monitoring patients and dispensing medications (¶ 7). As an employment benefit, she had health insurance for herself and her minor child.

In 2011, Parkview's Director of Nursing was Vanessa Graham (now Kennon), and the Assistant Director was Faye McIntosh (¶ 3). Both were Registered Nurses ("R.N."). CHS also employed Nursing Supervisors, who were responsible for supervising and assisting the floor nurses in the performance of their rounds and for maintaining and dispensing emergency medications kept in a locked container ("E-box") (¶ 6). It is undisputed that on the morning of April 4, 2011, Chandlers refused to accept the keys (for the front door and E-box) from

---

[2] Plaintiff provides no city in the Parkview facility's address.

the nightshift supervisor Hall. The parties do not dispute that Chandler then left the premises and did not return. They also do not dispute that the Director of Nursing called Chandler that afternoon and spoke with her about her conduct that morning.

### 2. Disputed Factual Allegations

The rest of the plaintiff's proposed findings of fact (and legal arguments based on them) are high-lighted in red as "disputed" by CHS (doc. no. 24-6, ¶¶ 3-21). The parties disagree as to myriad details of the surrounding circumstances that morning.[3] For example, in her "Proposed Findings," Chandler asserts that Parkview was "understaffed" in 2011 (¶ 8) and that on April 4, 2011, she was assigned "too heavy a workload for one person" (¶ 12). She contends she would have been "responsible for approximately 30 skill care patients and [15] assisted living patients" on that day (¶ 12).[4] She alleges she complained to the nightshift Nursing Supervisor "Lakita (sic) Hall," who was going home and had been

---

[3] The parties do not even agree on the date Chandler began working at Parkview. Chandler indicates in her proposed findings that she started on October 1, 2010 (doc. no. 26-4, ¶ 2), whereas CHS points to documentation showing that she actually started on December 22, 2009 (doc. no. 24 at 3; Chandler Dep. at 147, Ex. B signed employment forms). Chandler acknowledged these forms at deposition, and the hiring date in her proposed findings is apparently erroneous. Regardless, her hiring date is not "material" for purposes of summary judgment.

[4] Chandler omitted the "15" from her proposed findings, but asserts in her affidavit that she would have been "responsible for approximately 30 skill care patients and 15 assisted living patients" (doc. no. 19-1 at 2, ¶ 8).

instructed to give her the keys (¶ 12).[5] According to plaintiff, this would have left her "in control of the entire facility, including the E-box" (¶¶ 13-14). Chandler alleges that after she refused to take the keys, Nurse Hall spoke by telephone with Asst. Director McIntosh "at about 7:45 a.m." and relayed the instruction that "if Chandler would not accept the supervisor's keys, then she should clock out and go home" (¶ 17). Chandler refused to accept the keys and left. She alleges that the Director of Nursing called her that afternoon and terminated her employment for failing to follow directions and for refusing to accept Hall's keys (¶ 18).

CHS disputes Chandler's version of events. CHS points out that Chandler's assertion of "inadequate staffing" at Parkview is unsupported and incorrect. In its response, CHS points to personnel records, facility population records, and other evidence showing that Parkview was adequately staffed for the number of patients (doc. no. 24 at 7-8, Exs. B-F). CHS suggests that plaintiff's assertion of "inadequate staffing" is based on an erroneous assumption of full occupancy, when in fact, facility census records show only 75% occupancy at most, with some units at only 50% occupancy (doc. no. 24 at 8). CHS points to floor plans and other evidence (such as the Affidavit of Asst. Director McIntosh) showing that, contrary to Chandler's allegation, Parkview did not even have an assisted living unit (doc. no. 24 at 7; 24-2 at 1). CHS also points to evidence showing that

---

[5] CHS indicates that plaintiff has misspelled this nurse's first name as "Lakicia" or "Lakita" and has erroneously referred to her last name as "Walker" (doc. no. 24 at 3). CHS indicates that this nurse's name is "Likicia Hall."

plaintiff would only have been responsible for 22-23 patients at the most on April 4, 2011 (doc. no. 24 at 8).

As to Chandler's time-line of events, CHS points to automated time-clock records showing that on April 4, 2011, Chandler was late for work and clocked in at 7:07 a.m. and then clocked out at 7:23 a.m. – not at 7:45 or 8:00 a.m. as Chandler testified at deposition (doc. no. 24 at 4, citing Chandler Dep. at 126). Although Chandler claims she was there for approximately one hour, CHS points to evidence that she was there only 16 minutes. Chandler acknowledged at deposition that she left work immediately after clocking out (doc. no. 25, Chandler Dep. at 126). CHS contends that Chandler abandoned her patients and walked off the job "in a huff" because she did not like her work assignment that day.

CHS points out that Chandler has acknowledged under oath that in her phone conversation with the Director of Nursing on the afternoon of April 4, 2011, she falsely told the Director that she had left due to a "family emergency" (doc. no. 24 at 6, citing Chandler Dep. at 138-139, see also Ex. A, Director's Statement dated 4-4-2011 "When I questioned Bridgett about leaving again, and asked her to please be honest, she then stated she was sorry for not telling the truth . . . I again confirmed with her that she was quitting without notice and she agreed"). Ohio Admin. Code § 4723-4-04 (P) provides that "A licensed nurse shall not make any false, misleading, or deceptive statements. . . to . . . employers." At deposition, Chandler confirmed the accuracy of the Director's written account as to Chandler's false reason (doc. no. 25, Chandler Dep. at 138, Q: "Is that a fair summary of what happened? A: Yes."), but further testified that she did not

"remember" agreeing with the Director that she was quitting without notice (Id. at 143 "I don't remember her ever saying that").

In short, plaintiff is not entitled to summary judgment on her claim of employment termination in violation of public policy.

### B. The COBRA Notification Claim

Plaintiff also moves for summary judgment on her COBRA notification claim, but merely attaches a COBRA notice dated March 28, 2012 for "continuing coverage" beginning January 1, 2012. Such exhibit does not establish that plaintiff is entitled to summary judgment. CHS contends that Chandler quit her job without notice, that her actions amounted to "gross misconduct" (insubordination and abandonment of her responsibility to care for patients), and that she was not entitled to COBRA notification pursuant to 29 U.S.C. § 1163(2). CHS points out that plaintiff acknowledged at deposition that she had refused to follow instructions and accept the supervisor's keys. CHS points to scheduling and time records showing that plaintiff left work early. Genuine disputes of material fact exist as to whether Chandler engaged in "gross misconduct" such that her termination from employment was not a "qualifying event" that would trigger COBRA's notification requirement. See, e.g., Deutsch v. Kroll Associates, Inc., 2003 WL 22203740, *6 (S.D.N.Y.) (denying summary judgment because genuine disputes of material fact existed as to whether employee was terminated for "gross misconduct" thereby disentitling plaintiff to COBRA benefits). CHS has pointed to sufficient evidence demonstrating that plaintiff is not entitled to summary judgment on this claim.

**13**

## C. The Plaintiffs' Objections

Rule 56(c)(2) provides that a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2). Plaintiff raises three objections to exhibits attached to the defendant's response to the motion for summary judgment.

### 1. Plaintiff's First Objection

Plaintiff objects that the 79 pages of "exhibits referenced in the Affidavits of Vanessa Kennen and Pam Maninga . . . have not been properly authenticated and therefore are inadmissible" (doc. no. 32). Both affidavits refer to Parkview's business records, such as daily census records, personnel staffing records, shift schedules, audit reports, medication records, E-box list, and the floor plan (doc. no. 24, Exs. A-I). CHS has attached these documents to its summary judgment response. In their affidavits, Kennen and Maninga both attest to the documents as the regular business records of the Parkview facility.

Ms. Maninga indicates in her affidavit that she is the current "Senior Clinical Consultant to the (now-former) operator of the Parkview facility," that she personally reviewed the records, and that "such records are kept, maintained, and relied upon in the course of ordinary and regularly conducted business" (doc. no. 24-1 at 13, ¶ 3). In her objection, plaintiff suggests no reason why Ms. Maninga allegedly cannot authenticate Exhibits A-I. Plaintiff's objection regarding authentication may be overruled for this reason alone.

**14**

Plaintiff argues that Ms. Kennon cannot authenticate these business records because, although she was the Director of Nursing at the time of Chandler's termination, she subsequently left CHS. Plaintiff argues that Ms. Kennon cannot "attest to the business records of an entity with which she is no longer affiliated," but cites no relevant authority.[6] Kennon indicates that, as the former Director of Nursing at Parkview, she has personal knowledge of the business records regularly maintained under her tenure there. An affidavit used to support or oppose a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Kennon's affidavit satisfies such requirements, and in any event, all of the records can also be authenticated by Ms. Maninga. Plaintiff's objection regarding authentication is without merit.

Plaintiff further objects that Exhibits A-I were not specifically identified in the initial Rule 26(a) disclosures and that CHS should have supplemented them. While parties have an ongoing mutual obligation to supplement initial disclosures "whenever a party learns that its prior disclosure or responses are in some material respect incomplete or incorrect," *see* Fed.R.Civ.P. 26 (Advisory Committee Notes, 2013 Edition, comments on subdivision (e), at 160), plaintiff's

---

[6] Plaintiff attaches a magistrate's order from an out-of-district case that is factually distinguishable, as it involved authentication of the records of two separate unaffiliated businesses, rather than a former employee with personal knowledge of her employer's records kept during her tenure. Moreover, the attached order simply recognized that "the person presenting the foundation for a business record must be testifying as to the procedures of the appropriate business" (doc. no. 32-2 at 1).

argument provides no basis to impose the sanction of disregarding such exhibits under the circumstances of the present case.

CHS points out that its initial disclosures were complete when made and fully complied with Rule 26. See Fed.R.Civ.P. 26(a)(1)(E) ("A party must make its initial disclosures based on the information then reasonably available to it."). CHS listed five potential witnesses: the plaintiff, Faye McIntosh, Vanessa Graham (now Kennon), Janet Bresnahan, and "unknown representatives." CHS identified "select records, including certain Employment Handbook and Policies, and communications surrounding the determination for plaintiff's dismissal" (doc. no. 32-1 at 1). Plaintiff made no effort to inquire about any "unknown representatives" or to request any "select records" pertaining to plaintiff's dismissal. Although plaintiff now complains that she had "no knowledge" of Exhibits A-I prior "to the close of discovery" (doc. no. 32 at 3), the record does not reflect that she made any effort to request relevant records or to conduct any other written discovery in a timely manner. Plaintiff has no one but herself to blame for her own failure to seek discovery. As CHS points out, plaintiff filed suit and bears the burden to prove her claims.

As for the duty to supplement disclosures with later–acquired information, CHS points out (doc. no. 36 at 5-6) that until Chandler was deposed on January 30, 2012, CHS did not know what specific documents would be needed to counter plaintiff's assertions. See also, Fed.R.Civ.P. 26(a)(1)(A)(i) and (ii) (providing that disclosure of matters used "solely for impeachment" is not required). Plaintiff moved for summary judgment on February 1, 2012, and CHS appropriately

responded by pointing to evidence showing that plaintiff was not entitled to summary judgment. For example, CHS responded to plaintiff's proposed finding of "inadequate staffing" with documentation showing adequate staffing levels. Plaintiff can hardly claim to be surprised at such a response. CHS points out that any "supplementation" of initial disclosures would have been futile, given that plaintiff moved for summary judgment two days after she was deposed" (doc. no. 36 at 6). Under these circumstances, the alleged failure to supplement disclosures was substantially justified. Plaintiff's objection lacks merit. Additionally, even supposing that supplementation of the initial disclosures might have been appropriate, the drastic sanction that plaintiff urges (exclusion of the relevant testimony of the main defense witness) is not warranted here.

### 2. Plaintiff's Objection to the Affidavits of Brack and Graf

Plaintiff also objects (doc. no. 31) to the affidavits of Jennifer Brack and Brenda Graf. CHS attached such affidavits to its summary judgment response.

Ms. Brack indicates she is the Corporate Benefits Manager for Provider Services Holdings, LLC (the operator of Parkview in 2011), that she has personal knowledge of the facility's record-keeping system and benefits administration. She indicates that CHS entirely paid Chandler' health insurance through December 31, 2011 (doc. no. 24-1 at 27).

Ms. Graf indicates she is CHS' in-house counsel and that, after Chandler filed this lawsuit in March of 2012, she directed issuance of a COBRA notice to the plaintiff as a precaution "in the event it was determined ultimately that

**17**

plaintiff's gross misconduct did not provide a complete defense to the lawsuit" (doc. no. 24-1 at 30).

Plaintiff again complains that CHS did not name these two individuals as potential witnesses in the initial disclosures. Plaintiff urges that their affidavits should therefore be excluded for purposes of summary judgment. CHS responds that the disclosures were accurate and complete when made (doc. no. 36 at 8). CHS points out that plaintiff conducted no subsequent written discovery. Since plaintiff was deposed on January 30, 2013, and plaintiff moved for summary judgment on February 1, 2013, CHS argues that it had little time to supplement the disclosures based on what it had learned at Chandler's deposition. For the reasons already discussed, the Court finds that the sanction of exclusion for alleged failure to supplement the initial disclosures is not warranted under the circumstances of this case. Plaintiff's objection lacks merit.

Plaintiff apparently labors under the misconception that she would be entitled to summary judgment on the COBRA claim if these two affidavits were disregarded. Her assumption is incorrect. These two affidavits pertain largely to any potential damages, not liability.[7] Even if the two affidavits were not considered, plaintiff would still not be entitled to summary judgment.

---

[7] COBRA's civil enforcement provision provides for statutory damages of up to $100 per day for failing to abide by its notice requirements and reasonable attorney fees and costs. See 29 U.S.C. §§ 1132(c)(1) & (3), (g)(1). The award of statutory damages is within the discretion of the district judge. Bartling v. Fruehauf Corp., 29 F.3d 1062, 1068-69 (6th Cir. 1994) (observing that courts have declined to impose penalties in the absence of bad faith or prejudice); Nero v. University Hosp. Mgmt. Serv. Org., 2006 WL 2933957, *5 (N.D.Ohio).

Plaintiffs' counsel appears to confuse his own responsibility to conduct discovery with the parties' ongoing mutual obligation to supplement initial disclosures. Having delayed depositions until the day before the dispositive motion deadline, and having filed his motion for summary judgment the next day, plaintiffs' counsel argues *he* was "sand-bagged" because CHS attached evidence (that plaintiff never sought in discovery) to its summary judgment response. Plaintiff's argument is not persuasive, and this objection lacks merit.

### 3. Plaintiff's Third Objection

Plaintiff objects to paragraphs 8-10 in the affidavit of Asst. Director Faye McIntosh, R.N. (doc. no. 33). In ¶ 8, McIntosh indicates ""with respect to Plaintiff's termination, I did not speak with Plaintiff on the date she was terminated." Plaintiff argues that this is "hearsay." On the contrary, this line in the affidavit has nothing to do with hearsay. See Fed.R.Evid. 801(c) ("Hearsay means a statement that . . . a party offers to prove the truth of the matter asserted in the statement"). Plaintiff has shown no basis to object to ¶ 8 of the Affidavit. In fact, she acknowledges that McIntosh did not call her that day (doc. no. 29-1 at 14 "No sir, she did not . . . I never had any conversation with Ms. Faye McIntosh").

With respect to ¶ 9 of her affidavit, McIntosh indicates that "I have a recollection of speaking with [Nurse] Hall on the morning of April 4, 2011." Chandler acknowledges that this conversation occurred. In her proposed findings, Chandler indicates that she refused to take Nurse Hall's the keys, and

that Hall then spoke by telephone with McIntosh "at about 7:45 a.m." and relayed the instruction that "if Chandler would not accept the supervisor's keys, then she should clock out and go home" (doc. no. 24-6, ¶ 17). Chandler has provided the affidavit of Hall, who confirms this conversation (doc. no. 19, ¶ 14). The fact that this conversation took place is not disputed. Plaintiff has shown no basis for objecting to this part of  ¶ 9 of the Affidavit.

In the rest of ¶¶ 9 and 10, McIntosh sets forth what she <u>did</u> and <u>did not</u> discuss in that conversation with Hall. Plaintiff takes exception to the part of ¶ 9 where McIntosh indicates that she never discussed various other complaints that Chandler now claims to have been making at the time. Chandler contends that ¶¶ 9-10 are inconsistent with McIntosh's sworn testimony in a telephonic hearing before the "Unemployment Compensation Review Commission" on July 25, 2011 (doc. no. 29). Chandler contends that McIntosh told the Commission she did not remember the content of the conversation, therefore, ¶¶ 9-10 are "inadmissible." In her reply (doc. no. 40 at 3), plaintiff cites transcript page number "67" but no such page number exists in the unemployment hearing transcript.

More importantly, in urging that McIntosh is making "inconsistent statements," Chandler has not accurately discussed the content of the hearing transcript. There, McIntosh indicated that she didn't recall talking *with Chandler* that day and that Chandler never talked with her "regarding the issues, what issues she had with taking the keys, or anything like this" (doc. no. 29-1 at 6, 8). At the hearing, McIntosh indicated she had also participated in a conference call *with the Director* that day, but didn't remember the substance of the discussion,

**20**

although she had prepared a written statement at the time (at 7, 9). In her affidavit, McIntosh refers to her discussion *with Hall.* Plaintiff confuses matters because she refers to McIntosh's hearing testimony about not recalling the substance of her conversation *with the Director*, but paragraphs 9-10 of the affidavit only concern McIntosh's own conversation *with Hall*. Since McIntosh's hearing testimony and her subsequent affidavit refer *to different conversations*, plaintiff's objection as to purported "inconsistency" lacks merit.

In any event, plaintiff's hearsay objection serves little purpose here, because even if paragraphs 8-10 of McIntosh's affidavit were not considered, plaintiff would still not be entitled to summary judgment.

### D. The Contempt Motion

Finally, plaintiff complains that Vanessa Keenon (Parkview's former Director of Nursing) did not appear for her deposition on January 30, 2013. Plaintiff's counsel made no effort to reschedule the deposition, and instead, urges that the Court should hold Kennon and defense counsel "in contempt" and "bar her from providing testimony on behalf of defendant's (sic) in this matter" (doc. no. 30). Plaintiff argues that "the proper remedy . . . would be an award of sanctions, up to an including entry of a summary judgment in favor of Chandler" (Id. at 4). The Court declines to hold defense counsel or the non-party witness in contempt, and in any event, the drastic sanction urged by plaintiff would not be appropriate under the circumstances.

In the first place, defense counsel does not represent this non-party witness, who no longer works for CHS. Rather, as a matter of professional courtesy, defense counsel merely provided plaintiff's counsel with the witness's last known address upon request in January 2013. Defense counsel indicates (doc. no. 37 at 1, fn.1) that he never saw a notice for this deposition until plaintiff's counsel filed it as an exhibit on March 18, 2013. Plaintiff's counsel noticed this deposition well beyond the discovery deadline. Plaintiff now complains that, in response to the plaintiff's motion for summary judgment, defense counsel obtained and filed Kennon's affidavit. Plaintiff has shown no basis whatsoever for any "contempt" against defense counsel.

As for the witness, the Court is concerned by allegations that a deposition notice was ignored, assuming that such deposition was properly noticed. Rule 45(e) provides that the "issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena." Fed.R.Civ.P. 45(e). Here, it is unclear that the subpoena was "properly noticed," given that plaintiff's counsel did not file a notice in the record at the time and given that the notice has other irregularities on its face. For example, the subpoena notice did not fully comply with the federal rules, as it did not indicate that plaintiff's counsel tendered to the witness any fees for one day's attendance or for the mileage allowed by law (approximately 13 miles in this instance). See Fed.R.Civ.P. 45(b)(1) ("Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 days' attendance and the mileage allowed by law.").

Plaintiff's counsel apparently made no attempt to arrange an agreed date for this deposition or to discuss matters with defense counsel in an effort to ensure the attendance of Kennon, the former Director of Nursing for Parkview. Plaintiff's counsel did not reschedule the deposition. Although plaintiff's counsel indicates he served the notice on the witness on January 24, 2013 and that the deposition was scheduled for January 30, 2013, the record reflects that plaintiff's counsel waited until March 18, 2013 to file a return of subpoena.

Moreover, the non-party witness has provided an affidavit indicating that she was not served on the date claimed by plaintiff's counsel. She indicates that, at the time, she was moving furniture into a U-Haul truck at 8 p.m. at night, inadvertently misplaced the notice, and had no way to know who to contact about the matter. The record suggests that the witness may have an adequate excuse under the circumstances. See, e.g., Brown v. Voorhies, 2010 WL 4384227, *2 (S.D.Ohio) (holding that because plaintiff "has not produced clear and convincing evidence that KBHR wilfully disobeyed a specific court order or that it failed without adequate excuse to obey his subpoena, the Court will not enter a finding of contempt"). Additionally, the record does not reflect that the witness has been served with any notice of the plaintiff's contempt motion.

In light of the growing contentiousness of counsel in this case, the Court reminds counsel that they are fully expected to deal with one another in a civil and courteous manner. See S.D. Ohio Local Rules, Introductory Statement on Civility ("common courtesy, respect, and personal integrity play an essential role in the administration of justice"). The Court also reminds counsel that they have

23

an obligation under the rules to confer with one another before filing discovery disputes. Counsel's attention is directed to Local Rule 37.1 which provides:

> Objections, motions, applications, and requests relating to discovery shall not be filed in this Court, under any provision in Fed. R. Civ. P. 26 or 37 unless counsel have first exhausted among themselves all extrajudicial means for resolving the differences. After extrajudicial means for the resolution of differences about discovery have been exhausted, then in lieu of immediately filing a motion under Fed. R. Civ. P. 26 or 37 and S. D. Ohio Civ. R. 37.2, any party may first seek an informal telephone conference with the judicial officer assigned to supervise discovery in the case.

Plaintiff's counsel could easily have avoided the problems he now complains of, but instead, seeks to gain procedural advantage from his own apparent failures in this regard. Given Ms. Kennon's affidavit, plaintiff is well apprised of her likely testimony. Plaintiff will have full opportunity to cross-examine the witness at trial.

Finally, the Court observes that on April 25, 2013, defense counsel asked for leave to file a sur-reply regarding the contempt motion (doc. no. 42). Briefing on this motion is complete, and given the Court's denial of the motion for contempt, additional briefing is unnecessary.

### IV. Oral Argument Not Warranted

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant requests for oral argument. The parties have fully briefed the relevant issues. The Court finds that oral argument is not necessary. Yamaha Corp. of Am. v. Stonecipher's Baldwin Pianos & Organs, 975 F.2d 300, 301-02 (6th Cir. 1992);

<u>Schentur v. United States</u>, 4 F.3d 994, 1993 WL 330640 at *15 (6th Cir. (Ohio)) (observing that district courts may dispense with oral argument on motions for any number of sound judicial reasons).


      Accordingly, all three "Objections" (doc. nos. 31-33) are OVERRULED; the "Motion for Summary Judgment" (doc. no. 19) is DENIED; the "Motion for Contempt" (doc. no. 30) is DENIED; and the "Motion for Leave to Submit Sur-reply" (doc. no. 42) is DENIED as moot. This case shall proceed as scheduled.

      IT IS SO ORDERED.

                      <u>    s/Herman J. Weber</u>

                      Herman J. Weber, Senior Judge

                      United States District Court